IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ELIZABETH A. MORRISON    PLAINTIFF

v.    CIVIL NO. 04-3043

JO ANNE B. BARNHART, Commissioner
Social Security Administration    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Elizabeth A. Morrison brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).

**Procedural Background**:

The application for DIB presently before this court was filed on January 15, 1999, alleging an inability to work since January 6, 1999, due spasmodic torticollis,[1] diffuse myofascial pain syndrome and fibromyalgia. (Tr. 115-117). An administrative hearing was held on March 29, 2000. (Tr. 371-407). Plaintiff was present and represented by counsel. On May 19, 2000, the ALJ issued an unfavorable decision finding plaintiff capable of performing a significant range of light level work. (Tr. 34-45). Plaintiff appealed this decision and on September 14, 2001, the Appeals Council remanded plaintiff's claim for further consideration of plaintiff's testimony and to obtain vocational expert testimony. (Tr. 78-81).

---

[1] Torticollis is defined as a contracted state of the cervical muscles producing twisting of the neck and an unnatural position of the head. *See* Dorland's Illustrated Medication, Dictionary at 1853, 29th Edition (2000).

A second hearing before an ALJ was held on March 20, 2002. (Tr. 408-424). Plaintiff and two witnesses testified. On May 21, 2002, the ALJ issued an unfavorable decision. Plaintiff appealed this decision and on June 5, 2003, the Appeals Council remanded plaintiff's claim and instructed the ALJ to consider the testimony of plaintiff's witnesses. (Tr. 100-102).

A third hearing before an ALJ was held on December 5, 2003. (Tr. 425-483). Present and testifying were plaintiff, a witness and a vocational expert. By written decision dated February 17, 2004, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 23). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 23). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 23). With the help of vocational expert testimony, the ALJ found plaintiff would be able to perform her past relevant work as a corrections clerk and an accounts payable clerk. (Tr. 23).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision was denied. (Tr. 6-9). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties have submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. #'s 5,6).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or

3

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

## **Discussion:**

In determining whether the ALJ properly disregarded plaintiff's subjective complaints of pain, the court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

In his opinion, the ALJ found plaintiff's spasmodic torticollis and myofascial pain syndrome were severe impairments. (Tr. 19). He did not, however, discuss plaintiff's fibromyalgia.[2]

Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Diagnosis is recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. *See The Merck Manual,* pp. 1369-1371 (16th Edition, 1992). Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely eighteen fixed locations on the body (and the rule of thumb is that

---

[2] A significant number of people with fibromyalgia (FM) have a neuromuscular condition known as myofascial pain syndrome (MPS) in which very painful spots (trigger points) form in taut bands in muscles or other connective tissue, often as a result of repetitive motion injury, prolonged poor posture, or illness. Not only are these spots very painful but they also refer pain to other parts of the body in very predictable ways. Unlike FM which affects the entire body, MPS is a localized condition which occurs in very specific areas, typically the neck, shoulders, or lower back. TMJ is considered a form of MPS. *National Fibromyalgia Partnership, Inc.*, Fibromyalgia: Symptoms, Diagnosis, Treatment & Research (2005), *at* http://www.fmpartnership.org.

AO72A
(Rev. 8/82)

the patient must have at least eleven of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient who really has fibromyalgia to flinch.

We recognize that it is difficult to determine the severity of plaintiff's condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not. Michael Doherty & Adrian Jones, *Fibromyalgia Syndrome (ABC of Rheumatology)*, 310 BRITISH MED. J. 386 (1995). The question is whether the plaintiff is one of the minority, or not.

The medical evidence clearly indicates that plaintiff had been diagnosed with fibromyalgia. (Tr. 258, 295, 328, 331, 355-358). Physicians have documented plaintiff's complaints of pain, irritable bowel syndrome, sleep disturbance, fatigue and stiffness, all symptoms reasonably expected to be produced by plaintiff's fibromyalgia. Dr. Ronald Rubio also noted plaintiff exhibited tenderness in eighteen of the eighteen fibromyalgia tender points. (Tr. 356-357). However, it appears the ALJ gave little weight to the diagnosis of fibromyalgia or its debilitating effect. Rather, he focused his attention of plaintiff's reported ability to perform household chores, care for her personal needs, grocery shop, drive short distances and visit with her grandchildren. (Tr. 19). Contrary to the ALJ's assertion, the Eighth Circuit has held, in the context of fibromyalgia cases, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998). Accordingly, plaintiff's ability to perform these tasks does not automatically render her capable of performing work.

AO72A
(Rev. 8/82)

Therefore, because the ALJ improperly discredited plaintiff's subjective complaints of pain without considering the impact of her fibromyalgia, we find that his conclusion that plaintiff is not disabled is not supported by substantial evidence in the record as a whole. Accordingly, we believe remand is necessary in order to allow the ALJ to further develop the record regarding plaintiff's fibromyalgia and for a reevaluation of plaintiff's subjective complaints in light of this diagnosis. On remand the ALJ should re-evaluate plaintiff's subjective allegations in accordance with *Polaski*, 739 F.2d at 1322, specifically discussing each *Polaski* factor in the context of plaintiff's particular case.

The ALJ's RFC assessment is also of some concern to undersigned. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Given the fact that plaintiff was diagnosed with fibromyalgia, we cannot say that the ALJ's RFC assessment is supported by substantial evidence. The ALJ, in concluding that

7

plaintiff could perform the exertional and non-exertional requirements of a full range of light work, relied on an RFC assessment completed by non-examining, medical consultant, indicating plaintiff's ability to perform this level of work. (Tr. 234). We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). It is also significant to note that the RFC assessment relied upon was completed in February of 1999, and affirmed in June of 1999, prior to many of the medical records currently of recorded including Dr.Rubio's findings in support of his diagnosing plaintiff with fibromyalgia. As such, the examiner did not have the benefit of reviewing all of the medical evidence contained in the file.

Therefore, on remand, the ALJ is directed to address interrogatories to plaintiff's treating physicians, including Dr. Rubio, asking them to review plaintiff's medical records, complete an RFC assessment regarding plaintiff's capabilities during the time period in question, and to give the objective basis for their opinions so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The ALJ should also specifically request that the above physicians discuss what, if any, limitations are caused plaintiff's torticollis. The ALJ may also order a consultative exam, in which, the consultative examiner should be asked to review the medical evidence of record, perform a physical examination and appropriate testing needed to properly diagnosis plaintiff's condition and level of pain, and complete a medical assessment of plaintiff's ability to perform work related activities. *See* 20 C.F.R. §§ 404.1517. With this evidence, the ALJ should then re-evaluate plaintiff's RFC and specifically list in a hypothetical

8

to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence. If after proper review of an adequately developed record, the ALJ finds that plaintiff cannot return to her past relevant work, the burden will shift to the Commissioner to prove the existence of other jobs in the national economy that plaintiff can perform. *Sells v. Shalala,* 48 F.3d 1044 (8th Cir. 1995).

**Conclusion:**

Based on the foregoing, we hereby reverse the decision of the ALJ and remand this case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 31st day of August 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

9

AO72A
(Rev. 8/82)